# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES WILLIE NOLAN, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Case No. CIV-13-1074-HE |
| ) | |
| TRACY MCCOLLUM, Warden, ) | |
| ) | |
| Respondent.[1] ) | |

## REPORT AND RECOMMENDATION

Petitioner Charles Willie Nolan, an Oklahoma state prisoner appearing pro se, filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus (Doc. No. 1, "Petition"). United States District Judge Joe Heaton referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b). After examining Petitioner's filings, the undersigned ordered Respondent to answer or otherwise respond to the Petition. Order, Doc. No. 5; *see* 28 U.S.C. §§ 2241, 2244, 2254; R. 1(a)(1), 4, 5, 7, 8, Rules Governing Section 2254 Cases in the United States District Courts; LCvR 9.2(c). This matter is now before the Court on Respondent's motion to

---

[1] The docket sheet in this matter also identifies the Attorney General of the State of Oklahoma as a Respondent. The proper respondent when a petitioner "is currently in custody under a state-court judgment" is "the state officer who has custody" of the petitioner. *See* R. 2(a), Rules Governing § 2254 Cases in the United States District Courts. Thus, the only proper respondent in this matter is Tracy McCollum, the Warden of the Oklahoma State Reformatory in Granite, Oklahoma, where Petitioner is incarcerated. The Court Clerk is therefore directed to terminate the Attorney General of the State of Oklahoma as a party in this matter.

dismiss the Petition (Doc. No. 14), which was filed along with a brief in support (Doc. No. 15) and exhibits (Doc. Nos. 15-1 to 15-11).

BACKGROUND

A. *State Court Proceedings*

On January 31, 1989, Petitioner pled guilty to the crime of first-degree murder, as charged against him in the District Court of Tillman County, Oklahoma. *State v. Nolan*, No. CRF-88-85 (Tillman Cnty. Dist. Ct. filed Nov. 14, 1988); Resp't's Br. Ex. 7, Doc. No. 15-7, at 1 (summarizing proceedings in state court order).[2] On March 31, 1989, Petitioner was sentenced to imprisonment for life without parole. *See* Mar. 31, 1989 Sent'g Tr., Doc. No. 17 (conventionally filed), at 127-29; Resp't's Br. Ex. 7 at 2. Petitioner successfully moved to vacate the judgment and sentence based on the convicting court's failure to properly advise Petitioner of his right to appeal. Resp't's Br. Ex. 7 at 2. On June 2, 1989, Petitioner was resentenced to imprisonment for life without the possibility of parole. *See* Pet. at 1; June 2, 1989 Sent'g Tr., Doc. No. 17 (conventionally filed), at 2; Resp't's Br. Ex. 7 at 2. Petitioner sought at the second resentencing hearing to withdraw his guilty plea, but his request was denied. Resp't's Br. Ex. 7 at 2; June 2, 1989 Sent'g Tr. at 5. On July 21, 1992, the Oklahoma Court of Criminal Appeals affirmed Petitioner's judgment and sentence and denied Petitioner's petition for a writ of certiorari regarding the denial of his motion to withdraw his guilty

---

[2] Citations to documents filed electronically with the Court use the page numbers assigned by the Court's electronic filing system.

plea. *Nolan v. State*, No. C-89-857 (Okla. Crim. App. July 21, 1992); Resp't's Br. Ex. 1, Doc. No. 15-1, at 3-4; *see also* Pet. at 2. Petitioner did not file a petition for writ of certiorari with the United States Supreme Court. Pet. at 3.

On March 31, 1997, Petitioner filed a first application for postconviction relief in the District Court of Tillman County, which was denied on May 2, 1997. Pet. at 3; *State v. Nolan*, No. CRF-88-85 (Tillman Cnty. Dist. Ct.); Resp't's Br. Ex. 2, Doc. No. 15-2; Resp't's Br. Ex. 3, Doc. No. 15-3. Petitioner appealed to the Oklahoma Court of Criminal Appeals, which affirmed the denial on July 2, 1997. Pet. at 3; *Nolan v. State*, No. PC-97-698 (Okla. Crim. App. July 2, 1997); Resp't's Br. Ex. 5, Doc. No. 15-5.

On August 16, 1999, Petitioner filed a second application for postconviction relief in the District Court of Tillman County, which was denied on January 21, 2000. Pet. at 3; *State v. Nolan*, No. CRF-88-85 (Tillman Cnty. Dist. Ct.); Resp't's Br. Ex. 6, Doc. No. 15-6; Resp't's Br. Ex. 7, Doc. No. 15-7. Petitioner did not appeal the denial. Pet. at 4.

On January 2, 2013, Petitioner filed a third application for postconviction relief in the District Court of Tillman County, which was denied on May 31, 2013. *State v. Nolan*, No. CRF-88-85 (Tillman Cnty. Dist. Ct.); Resp't's Br. Ex. 8, Doc. No. 15-8; Resp't's Br. Ex. 9, Doc. No. 15-9; *see also* Pet. at 3-4. Petitioner appealed to the Oklahoma Court of Criminal Appeals, which affirmed the denial on August 15, 2013. *Nolan v. State*, No. PC-13-617 (Okla. Crim. App. Aug. 15, 2013); Resp't's Br. Ex. 10, Doc. No. 15-10; Resp't's Br. Ex. 11, Doc. No. 15-11; *see also* Pet. at 4.

B. *Federal Habeas Petition Under 28 U.S.C. § 2254*

Petitioner filed the Petition that is now before the Court on October 7, 2013. Petitioner raises four grounds for relief. *See* Pet. at 4-8. In explaining the timeliness of his Petition, Petitioner asserts:

> All of Petitioner[']s § 2254 Substantive Habeas Claims currently raised in this Petition Grounds One - Four, were fully exhausted within the State Court of Criminal Appeals on post conviction relief. Petitioner has sought no other relief in any other State or Federal Court in these Grounds now presently before this Court. Petitioner[']s § 2254 Habeas Petition is now currently filed with this Court within the Statutory 1 year tolling period or Petitioner has invoked procedural default strategy: actual innocence & fundamental miscarriage of justice exception & cause and prejudice, as a result of ineffective assistance of counsel.

Pet. at 10. Although Petitioner pled guilty before proceeding to trial, Petitioner requests a "new trial." *See* Pet. at 1-2, 10 (capitalization altered). Petitioner alternatively requests a modification of his sentence or that his conviction and sentence be vacated. Pet. at 11.

　　1. Ground One

In Ground One, Petitioner asserts that he received an excessive sentence because the sentencing court "failed to appropriately consider Petitioner's age and other mitigating evidence." Pet. at 4 (capitalization altered). Petitioner "was 17 years of [age] at the time of the offense and sentencing." Pet. at 4. Petitioner alleges that he received "a sentence of life without the possibility of parole, the state's harshest penalty," despite "the evidence developed at the sentencing hearing through expert testimony that Petitioner was mentally 10 or 11"; the "absence of aggravating factors"; and the "absence of [a] presentenc[e] investigation." Pet. at 4.

2. <u>Ground Two</u>

In Ground Two, Petitioner contends that he is "factually innocent of the crime of murder in the first degree." Pet. at 5 (capitalization altered). In support of this assertion, Petitioner states:

> During the plea allocution Petitioner stated a factual basis for entering a guilty plea to the charge of Murder in the First Degree, as follows: "I robbed him and hit him with a hammer twice." This is far from establishing every element of Murder, which are: (1) death of a human; (2) the death was unlawful; (3) the death was caused by the defendant[;] (4) the death was caused with malice aforethought.

Pet. at 5.

3. <u>Ground Three</u>

In Ground Three, Petitioner alleges that the District Court of Tillman County lacked jurisdiction "to try Petitioner's case." *See* Pet. at 6 (capitalization altered). In support of this assertion, Petitioner states:

> Former Title 10 OS § 1104.2 provides the jurisdictional predicate for a youth under the age of 18 to be charged as an adult without notice or a hearing. Petitioner was charged with Murder First Degree when he was 17 years old and deemed an adult pursuant to the statute. However, the statute does not pass constitutional muster due to violations of due process and equal protection.

Pet. at 6-7.

4. <u>Ground Four</u>

In Ground Four, Petitioner asserts that he was denied the effective assistance of counsel before and while entering his plea of guilty. *See* Pet. at 8. Petitioner further asserts that he was denied the effective assistance of appellate counsel based on such

5

counsel's alleged failure to raise the prior counsel's purported failures when appealing the denial of Petitioner's request to withdraw his guilty plea. *See* Pet. at 8.

## ANALYSIS

### A. *Limitation Period Under 28 U.S.C. § 2244(d)(1)*

Effective April 24, 1996, a statutory limitation period of one year applies to any "application for a writ of habeas corpus [filed] by a person in custody pursuant to the judgment of a State court." *See* 28 U.S.C. § 2244(d)(1). For a petitioner whose claims accrued in connection with a conviction that became final before that date, the one-year period began to run as of April 24, 1996, and expired, absent any statutory or equitable tolling, on April 24, 1997. *See Fisher v. Gibson*, 262 F.3d 1135, 1142 (10th Cir. 2001); *Hoggro v. Boone*, 150 F.3d 1223, 1225 (10th Cir. 1998).

Liberally construed, Petitioner argues for the applicability of a different accrual date and subsequent limitation period. *See* Pet. at 3-5; Pet'r's Resp. at 2-3. When the United States Supreme Court newly recognizes a constitutional right and recognizes that right's retroactive applicability to collaterally reviewed cases, the one-year limitation period under 2244(d)(1) is calculated from the date of the Supreme Court's decision initially recognizing the right. 28 U.S.C. § 2244(d)(1)(C). Petitioner asserts that *Miller v. Alabama*, 132 S. Ct. 2455 (2012), presents such a newly recognized constitutional right that is retroactively applicable to his state court sentence. *See* Pet. at 3-5; *see also* Pet'r's Resp. at 3. The Supreme Court decided *Miller* on June 25, 2012. Thus, the limitation period for claims properly asserted under *Miller* began to run on June 26, 2012, and

expired, absent any statutory or equitable tolling, on June 26, 2013. *See Miller*, 132 S. Ct. 2455; 28 U.S.C. § 2244(d)(1)(C).

B. *Limitation Period for Petitioner's Claims*

1. <u>Filing Deadline for Claims Not Based on *Miller*</u>

Petitioner's conviction became final in October 1992.[3] As a general matter, Petitioner's limitation period under § 2244(d)(1) began to run on April 24, 1996, and expired, absent any statutory or equitable tolling, on April 24, 1997. *See Fisher*, 262 F.3d at 1142.[4]

Section 2244(d)(1)'s one-year limitation period is statutorily tolled during the pendency of "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim." 28 U.S.C. § 2244(d)(2). Petitioner filed his first application for postconviction relief in state court on March 31,

---

[3] For purposes of § 2244(d)(1), a conviction becomes final upon "the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A). Petitioner's direct review concluded when the Oklahoma Court of Criminal Appeals, the state court of last resort, affirmed Petitioner's judgment and sentence on July 21, 1992. *See Clayton v. Jones*, 700 F.3d 435, 441 (10th Cir. 2012) (citing Okla. Stat. tit. 22, § 1051(a); Okla. Stat. tit. 22, ch. 18 app., R. 4.2(A), (D)); *Locke v. Saffle*, 237 F.3d 1269, 1271 (10th Cir. 2001). Petitioner's time for seeking direct review expired ninety days later, after Petitioner declined to file a petition for writ of certiorari with the United States Supreme Court and the time for filing such a petition passed. *See* Pet. at 3; *Locke*, 237 F.3d at 1273. Thus, Petitioner's conviction became final on October 19, 1992.

[4] Each ground asserted in the Petition involves factual circumstances that were known to Petitioner, or discoverable with due diligence, at the time of Petitioner's plea, sentencing, or direct appeal—all of which had concluded by late July 1992 when the Oklahoma Court of Criminal Appeals affirmed Petitioner's judgment and sentence. *See* Pet. at 2, 4-8; *Nolan v. State*, No. C-89-857 (Okla. Crim. App. July 21, 1992); Resp't's Br. Ex. 1.

7

1997, with 24 days remaining in the § 2244(d)(1) federal limitation period. *See* Resp't's Br. Ex. 2. The matter was pending in state court until July 2, 1997, when the Oklahoma Court of Criminal Appeals affirmed the denial of Petitioner's first application. *See* Resp't's Br. Ex. 5. Thus, the limitation period was tolled from March 31, 1997, through July 2, 1997.[5] The remaining 24 days in the limitation period began to run the next day and expired on July 28, 1997.[6]

Petitioner's second application for postconviction relief in state court was filed on August 16, 1999, and his third was filed on January 2, 2013. Resp't's Br. Exs. 6, 8. "Only state petitions for post-conviction relief filed within the one year allowed by [§ 2244(d)(1)] will toll the statute of limitations." *Clark v. Oklahoma*, 468 F.3d 711, 714 (10th Cir. 2006). Because the second and third applications were filed after expiration of the limitation period, they do not toll the limitation period beyond July 28, 1997.

The filing deadline for a habeas petition may also be equitably tolled. Equitable tolling applies "in rare and exceptional circumstances." *Gibson v. Klinger*, 232 F.3d 799, 808 (10th Cir. 2000) (internal quotation marks omitted); *see also Holland v. Florida*, 560 U.S. 631, 634, 645 (2010) (recognizing applicability of equitable tolling to 28 U.S.C. §

---

[5] Regardless of whether a petitioner seeks a writ of certiorari from the United States Supreme Court after postconviction or other collateral review is complete in state court, the § 2244(d)(1) limitation period is not tolled under § 2244(d)(2) beyond the date of the state court's final decision. *See* 28 U.S.C. § 2244(d)(2); *Lawrence v. Florida*, 549 U.S. 327, 337 (2007).

[6] The final day of the 24-day period was July 26, 1997, a Saturday. Thus, in accordance with Federal Rules of Civil Procedure 6(a)(3)(A) and 81(a)(4), the limitation period expired the following Monday, July 28, 1997.

2244(d) "in appropriate cases"). A petitioner generally bears the burden of establishing the applicability of equitable tolling by showing "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*, 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *see also Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000). Neither a prisoner's ignorance of the law nor his attorney's negligence or mistake in pursuing certain types of relief after conviction is sufficient to establish the requisite extraordinary circumstances for equitable tolling of the limitation period. *See Fleming v. Evans*, 481 F.3d 1249, 1255-56 (10th Cir. 2007); *Marsh*, 223 F.3d at 1220.

In his Petition and subsequent brief, Petitioner offers no specific explanation for the filing date of his habeas claims other than to assert generally that all claims in his Petition are timely based on the applicability of *Miller*. *See* Pet. at 10; Pet'r's Resp. at 2. For any claims to which *Miller* does not apply, Petitioner has established neither a diligent pursuit of his rights nor the presence of an extraordinary circumstance that prevented him from timely seeking federal habeas relief. *See Holland*, 560 U.S. at 649; *Gibson*, 232 F.3d at 808. Thus, equitable tolling is inapplicable to those claims.[7]

---

[7] Nor has Petitioner established entitlement to the actual innocence equitable exception to § 2241(d)(1). "[A] credible showing of actual innocence" based on newly discovered evidence "may allow a prisoner to pursue his constitutional claims" as to his conviction, under an exception to procedural and limitations-based bars—including those imposed under 28 U.S.C. § 2244(d)(1)—to prevent a miscarriage of justice. *See McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928, 1931-32 (2013). Successful actual innocence claims are rare due to the strong evidentiary requirements for such claims. *See id.* at 1928, 1931, 1936; *House v. Bell*, 547 U.S. 518, 538 (2006). "[P]risoners asserting innocence as a

9

In sum, the filing deadline for any of Petitioner's claims that are not based on *Miller* was July 28, 1997.

2. Filing Deadline for Claims Based on *Miller*

To the extent that the alternate limitation period under § 2244(d)(1)(C) applies based on *Miller*, statutory tolling under § 2244(d)(2) would occur. When Petitioner filed his third application for postconviction relief in state court, 175 days remained in the § 2244(d)(1)(C) limitation period calculated from the *Miller* decision date. Petitioner's third application was pending in state court until August 15, 2013, when the Oklahoma Court of Criminal Appeals affirmed the denial of that application. Thus, for any claims to which *Miller* applies, the limitation period was tolled from January 2, 2013, through

---

gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House*, 547 U.S. at 536-37 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). Such actual innocence claims must be based on "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). As noted, Petitioner contends that he is "factually innocent of the crime of murder in the first degree," asserting that his own statement during his guilty plea—"'I robbed him and hit him with a hammer twice'"—was "far from establishing every element of Murder." Pet. at 5 (capitalization altered). Petitioner offers no discussion regarding the admissible evidence against him at the time of his conviction, and he presents no *new* evidence relevant to his conviction. *See* Pet. at 5; *Bousley*, 523 U.S. at 623-24; *Schlup*, 513 U.S. at 327-28; *Johnson v. Medina*, 547 F. App'x 880, 885 (10th Cir. 2013) (equating new evidence with "'relevant evidence that was either excluded or unavailable'" at the time of conviction (quoting *Schlup*, 513 U.S. at 327-28)). Instead, Petitioner presents only his own statement made during his plea proceeding and contends that the statement is insufficient to establish each element of the crime for which Petitioner was convicted. *See* Pet. at 5. Such a claim asserts legal insufficiency as to the plea rather than factual innocence and, thus, does not properly invoke the actual innocence equitable exception. *See McQuiggin*, 133 S. Ct. at 1928; *Bousley*, 523 U.S. at 623.

August 15, 2013. The remaining days in that limitation period began to run the next day and did not expire until February 2014.

*C. Applicability of* Miller *to Petitioner's Claims*

Petitioner filed his Petition in this Court on October 7, 2013,[8] prior to his deadline for habeas claims based on *Miller* but well after his deadline for habeas claims not based on *Miller*. Thus, the critical question is the applicability of *Miller* to Petitioner's claims.

In *Miller* and its companion case, the two petitioners—both fourteen years old at the time of their respective crimes—had been convicted of murder and sentenced to life imprisonment without the possibility of parole. *Miller*, 132 S. Ct. at 2460-63. In each case, the sentence was determined pursuant to a state statute that mandated life without parole upon conviction for homicide. *Id.* The Supreme Court held that a law mandating life imprisonment without the possibility of parole for a homicide offense is unconstitutional as applied to juveniles. *Id*. at 2469.[9]

The Supreme Court observed that:

> In neither case did the sentencing authority have any discretion to impose a different punishment. State law mandated that each juvenile die in prison even if a judge or jury would have thought that his youth and its attendant

---

[8] Even if properly invoked, the timeliness of the Petition would not be affected by application of the "prison mailbox rule," which generally considers a petition to be filed on the date that it was placed in the prison's legal mail system. *See* R. 3, Rules Governing Section 2254 Cases in the United States District Courts; *Marsh v. Soares*, 223 F.3d 1217, 1218 n.1 (10th Cir. 2000) (citing *Houston v. Lack*, 487 U.S. 266, 270 (1988)).

[9] The Court had previously prohibited both the imposition of capital punishment upon juvenile offenders and the imposition of life imprisonment without parole upon juvenile offenders convicted of nonhomicide crimes. *See Graham v. Florida*, 560 U.S. 48 (2010); *Roper v. Simmons*, 543 U.S. 551 (2005).

11

> characteristics, along with the nature of his crime, made a lesser sentence (for example, life *with* the possibility of parole) more appropriate. Such a scheme prevents those meting out punishment from considering a juvenile's "lessened culpability" and greater "capacity for change," and runs afoul of our cases' requirement of individualized sentencing for defendants facing the most serious penalties.

*Id.* at 2460 (citation omitted) (quoting *Graham v. Florida*, 560 U.S. 48, 68, 74 (2010)). The Court explained that these circumstances "implicate[] two strands of precedent reflecting our concern with proportionate punishment": (1) cases in which the Court has "adopted categorical bans on sentencing practices based on mismatches between the culpability of a class of offenders and the severity of a penalty," including cases "specially focused on juvenile offenders, because of their lesser culpability"; and (2) cases in which the Court has "prohibited mandatory imposition of capital punishment, requiring that sentencing authorities consider the characteristics of a defendant and the details of his offense before sentencing him to death." *Id.* at 2463-64. The Court declined to consider whether a life-without-parole sentence imposed upon a juvenile offender is always unconstitutional under this precedent. The Court held, however, that such a sentence *may* be disproportionate and therefore requires individualized consideration. *Id.* at 2465-69.

Thus, the Supreme Court determined that a sentencing scheme that mandates life imprisonment without parole for a homicide offense is unconstitutional as applied to juvenile offenders because such scheme precludes the sentencing court from considering proportionality-related factors such as the characteristics of youth, the offender's own circumstances, and circumstances of the crime itself. *Id.* at 2468. The Court noted that

its ruling did "not foreclose a sentencer's ability to [sentence juvenile offenders to life without parole] in homicide cases." *Id.* at 2469. The Court emphasized, however, the "great difficulty" in "distinguishing at [an] early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption,'" and stated that a sentencer must therefore "take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* (quoting *Roper*, 543 U.S. at 573; *Graham*, 560 U.S. at 68); *see also id.* at 2466 n.6 (describing decision as requiring "individualized sentencing . . . for homicide offenses"), 2471 (requiring "sentencer [to] follow a certain process—considering an offender's youth and attendant characteristics—before imposing [a life-without-parole sentence upon a juvenile offender]"), 2475 (requiring that "judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles").

For Petitioner to receive the benefit of the limitation period under § 2244(d)(1)(C) based on *Miller*, that case must have newly recognized a constitutional right that is retroactively applicable and relevant to Petitioner's habeas claims. *See* 28 U.S.C. § 2244(d)(1)(C); *Preston v. Gibson*, 234 F.3d 1118, 1120 (10th Cir. 2000); *Douma v. Workman*, No. 06-CV-0462-CVE-FHM, 2007 WL 2331883, at *3 (N.D. Okla. Aug. 13, 2007) (finding that even assuming a new Supreme Court case applied retroactively to cases on collateral review, the case "does not announce a constitutional right newly recognized by the Supreme Court which is applicable or relevant to [the petitioner's] case"). In his Motion to Dismiss, Respondent asserts two reasons for why *Miller* is

inapplicable to the Petition. First, Respondent argues that *Miller* is not retroactively applicable. Resp't's Mot. to Dismiss at 8-9. Second, Respondent argues that if *Miller* is retroactively applicable, it does not apply to Petitioner's sentence because Petitioner was not sentenced under a scheme that mandated life imprisonment without the possibility of parole for first-degree murder. *See* Resp't's Mot. to Dismiss at 9-12.

The undersigned proceeds to consider only the second of these arguments. Regarding the first, neither the Supreme Court nor the Tenth Circuit has examined, to date, the question of *Miller*'s retroactive applicability.[10] Other federal circuits and state courts are split on the issue. *See Croft v. Williams*, 773 F.3d 170, 171 (7th Cir. 2014) (discussing courts' conflicting views). Here, the undersigned determines that even if it is assumed that *Miller* is retroactively applicable, no newly recognized right in *Miller* applies to the Petition's claims.

1. Grounds Two, Three, and Four

*Miller* applies only to sentencing. Petitioner's Grounds Two, Three, and Four—respectively asserting, as detailed above, factual innocence, lack of jurisdiction, and ineffective assistance of counsel during plea and appeal proceedings—are plainly not

---

[10] The Supreme Court recently granted a petition for writ of certiorari to consider *Miller*'s retroactivity. *See Toca v. Louisiana*, 135 S. Ct. 781, 781-82 (2014). Within the Tenth Circuit, the United States District Court for the Northern District of Oklahoma recently denied a habeas petition in which the petitioner had invoked *Miller*, but the decision assumed without deciding that *Miller* was retroactively applicable. *Davis v. McCollum*, No. 14-CV-260-GKF-FHM, 2015 WL 566543, at *4-5 (N.D. Okla. Feb. 11, 2015), *appeal docketed*, No. 15-5018 (10th Cir. Mar. 17, 2015).

based upon a constitutional right newly recognized in *Miller*.[11] *See* Pet. at 5-8. Thus, the filing deadline for such claims was not extended by the issuance of *Miller* and consequent application of § 2244(d)(1)(C). These claims should be dismissed as untimely.

2. Ground One

Ground One is the only claim in the Petition to which *Miller* could potentially apply. There, Petitioner asserts that he received an excessive sentence because the sentencing court "failed to appropriately consider Petitioner's age and other mitigating evidence." Pet. at 4 (capitalization altered).

As an initial matter, Petitioner does not assert that he was sentenced to life without parole under a mandatory sentencing scheme, such as was at issue in *Miller*. *See* Pet. at

---

[11] In his Response to the Motion to Dismiss, Petitioner contends that Ground Three relates to *Miller*. In Ground Three, Petitioner asserts that former Title 10, Section 1104.2 of the Oklahoma Statutes "does not pass constitutional muster due to violations of due process and equal protection." Pet. at 6-7; *see also* Okla. Stat. Ann. tit. 10, § 1104.2 (West 1987) (statute in effect at time of Petitioner's crime and conviction); Okla. Stat. Ann. tit. 10a, § 2-5-101 (West 2009) (renumbered and amended statute, applying "only to offenses committed before January 1, 1998"). This statute provided, in pertinent part, that a 17-year-old who is charged with murder "shall be considered as an adult" but may seek and, if circumstances warrant, be certified "as a child to the juvenile division of the district court." Okla. Stat. Ann. tit. 10, § 1104.2 (West 1987). In his Petition, Petitioner does not adequately develop any federal habeas claim as to this reverse certification provision. *See* Pet. at 6-7. In his Response, Petitioner asserts that *Miller* held unconstitutional the practice of "deem[ing] [a juvenile criminal defendant] an adult without a [j]uvenile certification transfer hearing." *See* Pet'r's Resp. at 5-7. The Supreme Court in *Miller* did not invalidate such practice; rather, it merely rejected the suggestion that discretionary juvenile transfer statutes could suffice in lieu of individualized sentencing. *See Miller*, 132 S. Ct. at 2474-75 (stating "the discretion available to a judge at the transfer stage cannot substitute for discretion at post-trial sentencing in adult court—and so cannot satisfy the Eighth Amendment"). Accordingly, Petitioner's challenge of the Oklahoma statute does not invoke a federal constitutional right newly recognized in *Miller*.

4. Nor would such an assertion be accurate. *See* Okla. Stat. tit. 21, § 701.9(A) (Supp. 1989) (effective Nov. 1, 1987) ("A person who is convicted of or pleads guilty or nolo contendere to murder in the first degree shall be punished by death, by imprisonment for life without parole or by imprisonment for life.").[12] Thus, *Miller*'s holding as to mandatory sentencing schemes is inapplicable to Ground One.

*Miller* may nevertheless be read to extend beyond mandatory sentencing schemes. In *Miller*, the Supreme Court states that a sentencing court is required to "follow a certain process—considering an offender's youth and attendant characteristics—before imposing [a life-without-parole sentence upon a juvenile offender]." *Miller*, 132 S. Ct. at 2460-2469, 2471, 2475; *see also In re Morgan*, 713 F.3d 1365, 1367-68 (11th Cir. 2013) (discussing *Miller* holding in context of retroactivity); *Craig v. Cain*, No. 12-30035, 2013 WL 69128, at *1-2 (5th Cir. Jan. 4, 2013) (same); *Songster v. Beard*, 35 F. Supp. 3d 657, 663-64 (E.D. Pa. 2014) (same).[13] This and other discussion in *Miller* could be read as requiring all jurisdictions, including those with discretionary sentencing schemes, to

---

[12] In *Miller*, the Court cited one respondent's brief as listing twelve jurisdictions among fifteen that "make life without parole discretionary for juveniles." *Miller*, 132 S. Ct. at 2471-72 n.10. Oklahoma is listed among the twelve. Resp't's Br. at 25, *Miller*, 132 S. Ct. 2455 (No. 10-9646), 2012 WL 588454, at *25.

[13] For additional discussion of the varied interpretations as to whether *Miller* applies in jurisdictions with discretionary sentencing schemes and, if so, to what extent, see *Connecticut v. Riley*, __ A.3d __, 2015 WL 854827, at *1-3, *7-10 & n.5 (Conn. Mar. 10, 2015) (holding defendant entitled to new sentencing in accordance with *Miller* because trial court failed to reference defendant's age (17) in stating basis for discretionary imposition of 100-year sentence that was "functional equivalent" of life without parole), as well as the dissenting opinion in that case, *id.* at *12-17 (Espinosa, J., dissenting) (disagreeing with court's application of *Miller* to particular case and with court's interpretation of extent of *Miller* holding).

specifically consider a juvenile offender's youth and attendant characteristics prior to imposing a sentence of life imprisonment without parole.

The transcripts of Petitioner's sentencing proceedings reflect that Petitioner presented evidence and argument on the subject of his youth and its attendant characteristics. *See* Mar. 31, 1989 Sentencing Tr.; June 2, 1989 Sent'g Tr. at 2 (incorporating testimony from prior sentencing hearing). In addition to various references by his counsel to Petitioner's age at the time he committed the murder, Petitioner presented the testimony of a clinical psychologist regarding whether Petitioner could be "rehabilitated" over time and, thus, not pose a risk to the community if released on parole. *See* Mar. 31, 1989 Sent'g Tr. at 60-118, 67, 62-63. This testimony specifically included discussion of Petitioner's youth as a factor in the psychologist's assessment of Petitioner's prognosis. *See id*. at 76-77 (psychologist stating that Petitioner's "youth" and "immaturity," along with the ability to change over time, were factors in favor of permitting parole). The sentencing court noted Petitioner's youth in announcing the sentence of life without parole. *Id*. at 128 ("The Court believes that the mitigating factor presented to it all day long is this defendant's age.").

Petitioner argues that additional process was required under *Miller*. Petitioner suggests that it was error for the sentencing court not to require a presentence investigation. *See* Pet. at 4. Petitioner also suggests that it was error for the sentencing court to impose such a harsh penalty in the "absence of aggravating factors." *See* Pet. at 4. But the Supreme Court in *Miller* does not require, as part of the process that a sentencing court must follow when determining a life-without-parole sentence for a

17

juvenile, either a presentence investigation or the use of a formalized aggravating factor/mitigating factor analysis similar to that adopted by Oklahoma for consideration of a death penalty sentence. *See Miller*, 132 S. Ct. at 2460, 2466 n.6, 2468; Okla. Stat. tit. 21, §§ 701.10, 701.12. Rather, the Court in *Miller* holds that the Eighth Amendment requires "consider[ation]" of "an offender's youth and attendant characteristics" before a juvenile convicted of homicide may be sentenced to life imprisonment without the possibility of parole. *Miller*, 132 S. Ct. at 2460-2469; *see also id*. at 2466 (reiterating that "'criminal procedure laws that fail to take defendants' youthfulness into account *at all* would be flawed'" when determining proportionality of life-without-parole sentence for juvenile (emphasis added) (quoting *Graham*)), 2469 (noting that mandatory life-without-parole sentencing schemes impermissibly "mak[e] youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence").

Referring to the testimony and reports of the psychologist, Petitioner further asserts that there was "evidence developed at the sentencing hearing through expert testimony that Petitioner was mentally 10 or 11." Pet. at 4. To be clear, the referenced testimony regarded Petitioner's functioning in particular areas; the psychologist expressly stated that he did not assess Petitioner to be intellectually disabled, i.e., "mentally retarded," and did not assess Petitioner's "mental age." *See* Mar. 31, 1989 Sent'g Tr. at 75, 93-94, 106-07. Petitioner does not assert, nor does the sentencing transcript suggest, that the sentencing court did not consider the psychologist's testimony in determining Petitioner's sentence. *See* Pet. at 4; Mar. 31, 1989 Sent'g Tr. at 60, 67, 75-76, 106-07, 127-29.

Although Petitioner's case and *Miller* both involve the sentencing of juvenile offenders to life without parole for homicide offenses, the pertinent similarities end there. Petitioner received a sentence that is not precluded by *Miller*, through a process that was consistent with *Miller*'s requirement that a sentencer consider a juvenile offender's youth and attendant characteristics before imposing a sentence of life without parole. Because *Miller* does not require a specific result upon such consideration, Petitioner's disagreement with the result of his sentencing process, i.e., the imposition of a life sentence without parole, is insufficient to bring Petitioner's claim within the confines of *Miller* for the purpose of invoking § 2244(d)(1)(C). *See Preston*, 234 F.3d at 1120; *cf. Croft*, 773 F.3d at 171-72 (denying permission to file second or successive federal habeas petition based on inapplicability of *Miller* to petitioner's case); *Evans-Garcia v. United States*, 744 F.3d 235, 240-41 (1st Cir. 2014) (same, except assuming without deciding that retroactivity of *Miller* is limited to its holding as to mandatory sentencing schemes). Accordingly, Petitioner's claim for habeas relief as set forth in Ground One of the Petition should be dismissed as untimely.

## RECOMMENDATION

For the foregoing reasons, the undersigned recommends that Respondent's motion to dismiss the Petition (Doc. No. 14) be granted based upon the untimeliness of all grounds of the Petition.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of the right to file an objection to this Report and Recommendation with the Clerk of this Court by April 21, 2015, in accordance with 28

U.S.C. § 636 and Federal Rule of Civil Procedure 72. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation terminates the referral in the present case.

ENTERED this 31st day of March, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE